UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT GERALD GARCIA and JORGE JASSO,<br><br>Defendants. | Case No. 18-cr-00466-BLF<br><br>**ORDER DENYING REQUEST FOR BRADY INSTRUCTION** |

Defendants have requested that the Court give a jury instruction under *Brady v. United States*, 397 U.S. 742 (1970), based on the Government's failure to disclose to Defendants that cooperating witness Richard Delgado admitted to the Government during pretrial preparation that he had inaccurately testified to the grand jury that Defendant Jorge Jasso was involved in the removal of Fabian Robledo when, in fact, Jasso could not have participated because he was not in the jail at the time of the removal. The Government contends that there was no *Brady* violation because Jasso has not shown that he was prejudiced from the Government's failure to disclose Mr. Delgado's admission, and so no instruction is appropriate (or, if one is given, that the Court should give the Government's proposed instruction). As discussed on the record today, the request for a *Brady* instruction is DENIED.

There are three elements to a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "District courts have discretion in shaping the remedies for *Brady* and *Giglio* violations. Remedies for such violations, however,

'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *See United States v. Garrison*, 888 F.3d 1057, 1065 (9th Cir. 2018) (citation omitted) (quoting *United States v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010)).

The Government concedes that the first two *Brady* elements are satisfied: Mr. Delgado's admission that his testimony was inaccurate is "favorable" to Defendants because it could allow them to impeach Mr. Delgado, and this fact was "suppressed" by the Government when it failed to disclose the evidence to Defendants. *Banks*, 540 U.S. at 691. The Court agrees and finds that the Mr. Delgado's admission was *Brady* material that should have been disclosed to the Defendants. The real dispute centers on the third *Brady* element: whether the Government's failure to disclose Mr. Delgado's admission prejudiced Defendants. *Id.* The Court finds that it did not because the Court fashioned a remedy that drastically reduced or eliminated any prejudice to Defendants.

"[N]ot every violation of [the duty to disclose] necessarily establishes that the outcome was unjust." *United States v. Howell*, 231 F.3d 615, 626 (9th Cir. 2000) (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)). "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* (quoting *Strickler*, 527 U.S. at 281); *see also United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013) (focus of *Brady* inquiry is on "whether the withholding of evidence undermines our trust in the fairness of the trial and the resulting verdict").

Here, the Government's failure to disclose that Mr. Delgado admitted that his grand jury testimony was inaccurate did not prejudice Defendants because the Court provided immediate remedies to reduce or eliminate any prejudice to them. The Court allowed Defendants' counsel ample opportunity to cross-examine Mr. Delgado about his inaccurate grand jury testimony. *See Howell*, 231 F.3d at 626–27 (no *Brady* violation and no jury instruction necessary where defense counsel "effectively cross-examined the officers about inconsistencies between their trial testimony and the information in the[ir] [inaccurate] police reports"). At the end of the trial day where Mr. Delgado testified, Jasso's counsel raised the potential *Brady* issue. In order to remedy

the apparent *Brady* violation, the Court permitted Jasso's counsel the ability to recall Mr. Delgado for further cross-examination on the issue at a time of his choosing to allow him sufficient time to prepare. Tr. 1593–96. Jasso's counsel asked to recall Mr. Delgado the next trial day, the Government arranged for Mr. Delgado to be available at that time, and counsel for both Defendants re-crossed him that day. Tr. 1628–1652. This immediate opportunity for Defendants' counsel to ask follow-up questions of Mr. Delgado on this issue greatly reduces the chances of prejudice to Defendants from the Government's failure to disclose Mr. Delgado's admission to them during pretrial preparations. While Garcia's counsel argued that cross examination of other cooperators would have been different if they had known about Mr. Delgado's admission because other cooperators may have also made inaccurate statements to the grand jury, the Court finds no prejudice from this speculative possibility because there is no evidence of other suppression of evidence by the Government or other inaccurate grand jury testimony.

Additionally, Defendants did have in their possession the underlying evidence that revealed that Mr. Delgado's testimony to the grand jury was inaccurate. There is no dispute that the Government produced to Defendants (1) a transcript of Mr. Delgado's grand jury testimony; and (2) a Monterey County Jail roster for K-16 on the date of Mr. Robledo's removal that did not have Jasso listed as an inmate. While the Government should have disclosed Mr. Delgado's *admission* that his grand jury testimony was inaccurate, the Court finds any prejudice to Defendants from nondisclosure is further reduced because the Government previously disclosed to Defendants evidence showing that the grand jury testimony was in fact inaccurate.

Defendants' citation to *Garrison* in support of their argument for a *Brady* instruction is unconvincing. In *Garrison*, the Ninth Circuit found that the Government had made "grave mistakes in its prosecution of the case by repeatedly failing to timely disclose information to the defense" as required by *Brady*. 888 F.3d at 1061. In *Garrison*, the prosecution (1) failed to disclose impeachment evidence about two prosecution witnesses of which information defendants were unaware; (2) delayed until days before trial in providing plea negotiation documents and details to the defense; and (3) neglected to inform defendants that a witness had forwarded confidential joint defense information about two co-defendants to the witness's brother who was

3

employed at the FBI. *Id.* at 1061–62. These *Brady* violations led the government to dismiss two of Garrison's co-defendants but not Garrison, which Garrison argued "would lead the jury to assume that Garrison was guilty." *Id.* at 1062. The district court gave a *Brady* instruction akin to that requested by Defendants here and further instructed the jury that they were not to infer anything from the dismissal of the co-defendants. *Id.* at 1063. But there is no allegation of "grave mistakes" or "repeated[] fail[ures]" to disclose evidence in this case. *Id.* at 1061. While the Government admits that it should have disclosed Mr. Delgado's admission, this appears to have been an isolated incident, and the Government worked to accommodate an immediate effort by Defendants to further cross-examine Mr. Delgado. The Court thus finds *Garrison* inapposite.

This case is much more like *Howell*, on which the Government relies. In that case, the Government had produced police reports to defendants that inaccurately indicated that money was found on a codefendant's person when in fact it was taken from Howell. 231 F.3d at 623. The government learned of the errors in the reports but failed to disclose them to defendants. *Id.* Howell relied on those reports in constructing his theory that it was his codefendant, and not him, who was transporting and dealing drugs. *Id.* Howell alluded to the lack of physical evidence found on his person in his opening statement, and the prosecutor failed to correct the error. *Id.* The defense only learned the reports were inaccurate when a police officer testified about finding the money on Howell, not on his codefendant, and stated that the police reports were wrong. *Id.* at 624. Howell's attorney cross-examined the sergeant about the discrepancy and moved for a mistrial, which the district court denied. *Id.* The district court did not give a special jury instruction. *Id.* The Ninth Circuit affirmed the declination to give an instruction, finding that the opportunity to cross-examine witnesses about the inconsistency and the significant evidence introduced independent of the withheld evidence negated any prejudice to Howell. *Id.* at 627. The Government's failure to disclose here is less stark than in *Howell*: Defendants had other evidence that revealed the inaccuracy of Mr. Delgado's grand jury testimony here, while Howell relied on inaccurate evidence to construct his theory of the case and his opening statement to the jury. *Howell* is otherwise similar: Defendants here had ample opportunity to (and did) cross-examine Mr. Delgado about his inaccurate testimony, and the Government's case rests on

1 evidence other than that which was withheld from Defendants.

2 While Mr. Delgado's admission was favorable to Defendants and the Government
3 suppressed that information by failing to disclose it, the Court took ample and immediate remedial
4 steps to reduce or eliminate any prejudice to the Defendants.  Moreover, Defendants have not
5 identified any prejudice that has remained after those remedies.  For those reasons and those
6 explained on the record, the request for a *Brady* instruction is DENIED.

7 **IT IS SO ORDERED.**

9 Dated:  June 2, 2022

 _____
BETH LABSON FREEMAN
United States District Judge